Arguments not to exceed 15 minutes per side. Mr. Garr for the appellant. Thank you Judge Sutton and may it please the Court. The District Court's Damages Award on Remand should be set aside for three primary reasons. First, this Court, in its 2011 opinion, directed the District Court to calculate damages on a fair market value approach, taking the difference between what the government actually paid and the value of what the government received. Second, the District Court, at the government's urging, failed to follow this Court's mandate and instead adopted Mr. Zaccheretti's offer-based approach, which tried to re-engineer the offer that Pratt should have made in 1983, instead of determine the value of the engines that the government actually received years later. And third, not only is there a total failure of proof by the government on damages, but the evidence in the record overwhelmingly shows, and that includes comparable sales, historical sales, and the Air Force's own independent estimates, that the government did not pay more than the value of what it received. For those reasons, we would ask this Court to put an end to this long-running case, hold that the District Court is not entitled to damages because of the failure of proof. That doesn't mean that Pratt will pay nothing to the government. Pratt will pay the statutory penalty that Congress deemed appropriate for false statements. But the government is not entitled to any actual damages on top of that, where it has failed to show that it paid more than the value of the engines that it received. What is the statutory penalty? It's $7 million, Your Honor. Oh, $7 million, okay. In this case, it's calculated based on the number of false statements. It was the order of the District Court in the first instance, was it not? I'm sorry, Your Honor. It was the order of the District Court in the first instance. Yes, that's right, and this Court left it in place in the prior appeal. Now, going back to address each of these points, we don't think that there is serious doubt, as we read this Court's prior opinion, that this Court intended to adopt the fair market approach. That's the approach that comes from the decisions that this Court sided, the Bornstein case by the Supreme Court, the Roby case by this Court, and you can look at other decisions like the 50 acres of land case from the Supreme Court, or the commodities trading corporations case by the Supreme Court, or at page 130, the Court's... What do we do about the fact that, I mean, I think it's hard to say there wasn't competition here. I mean, in fact, that was the whole point of what the Air Force was doing. But it seems also fair to say on their side that you wouldn't call it a fully developed competitive market, I mean, because the whole point was to get GE in the mix. So does that, I mean, I'm just not sure what that does. It may be that you're right that simply looking at cost plus profits, which is usually for sole source, doesn't work here. But what about the reality that, you know, or what seems to me a reality, that it wasn't a typical competitive market? I'll accept for here that you can call it a competitive market to have just two competitors and one buyer, but even if you accept that, this was still kind of the beginning of it. And, you know, part of what they were doing, I'm sure was price competition, but I'm sure there was a little bit of national security stuff going on, that do we really want to have a world in which we have only one engine maker we're relying on, because that's going to be really dangerous if something happens to Pratt. So what do we do with that reality? I guess I'd make a few points in response to that. First is the Supreme Court in the second, here there's abundant evidence of fair market value. You have comparable sales, GE's own sales over the life of the contract. You've got historical sales, the prior sales that Pratt made in a situation where there were no allegations of fraud. You have the Air Force's own independent estimates of what the engines would be valued at, and you have foreign sales to the extent you want to go there. And third, I would say, take the government at its word in terms of the competition that existed here. There wasn't just competition here. The government, as recently as August of this year, has held out the procurement in this case as the gold standard for competitive procurements. And importantly, I think, Your Honors, is there was the initial 1983 BAFO. Those prices, and that's where the fraud took place that this Court determined. Those prices were never paid by the Air Force. After that, there was fierce competition through calls for improvement in each of the contract years at issue here. And there's no allegation of fraud as to the calls for improvement and the fierce competition, which the government called a perpetual competition working to perfection. So really, the Court would have to find an awfully good reason to determine that fair market value didn't apply here. We think the Court already concluded properly that the fair market value analysis doesn't apply. Is there anything in the record that says whether there are damages, and if so, what amount, if the only way you look at damages is just compare it to what GE was getting? Oh, sure. And that shows no damages? That shows what? Well, it shows in, I think, three out of the five years, GE's, Pratt beat GE's prices for the engines. The other two years, they were, you know, Pratt's prices were a little bit higher, but they were more or less comparable. And then you would look through the other sources as well. So just out of curiosity, why then, instead of saying they get nothing, why wouldn't, I mean, Judge Gleeson will not be the only one on this panel that's eager for this case to end, and I'm sure the lawyers feel the same way. Why wouldn't we just say that's that? That's it. The two years where Pratt engines cost more, look at that differential and extrapolate from that. That doesn't work? I don't think that's the complete evidence of the fair market value. I think you would look at all the conventional indicators, which also would be historical sales, and Pratt's prices were, you know, comparable to those. But why would historical sales matter when those are all pre-competitive, when there was just one entrant in the market? Well, there's no allegation of fraud in that circumstance. There's no reason to believe that the government didn't pay for the value of what it received there. So there's no reason to exclude that. And I think, importantly, the Court is left in the situation where, after this Court ordered the fair market value analysis, the government went back, resisted this Court's mandate to the point of saying the Court did not adopt a fair market value analysis, and then put all its eggs in the Zaccaretti basket, where Zaccaretti engaged in this subjective analysis of trying to re-engineer the offer that Pratt would have made in 1983 had it not made the false statements as to the split award. That's not a fair market analysis under any sense. So we can talk about why the record evidence shows that there is no damages when you look to the value of the engines that the government received. But I think, importantly, the government bore the burden of proof on damages. I don't think there's any dispute as to that. And the government has simply failed to show that it's entitled to any damages under the fair market value analysis. It made that decision, whether it was for strategic or other reasons. Perhaps it appreciated that when you do apply the conventional fair market indicators, it couldn't prevail in establishing any actual damages, and so it went with the Zaccaretti model. Now, the last time this case was before the Court, the government sold the Zaccaretti model under essentially the Singer-based approach, that where you've got false statements, one would presume that you've got a one-to-one effect on the price. This Court didn't adopt the Singer approach for good reason. No court, and the Singers from the Fourth Circuit, no court has adopted that analysis. It was applied in the sole source context. It applied, and this is not a sole source context. This is a context of fierce competition. This is really for both sides, but has that approach been applied outside the sole source context? No. Certainly not by any circuit court, and I'm not aware of any court that has ever applied that outside the sole source. And even within the sole source context of Singer, that analysis has been questioned. And so we would not, I think this Court would be sticking its neck out to adopt that analysis, certainly in the dual source context here. And the government has nothing else. That's how it tried to show the value of what the government received. If the government paid $100 for an engine that was worth $100, then it hasn't been harmed at all. It's actual damages. That's the way that the False Claims Act worked. The government is entitled to damages through the subjective re-engineering approach. And, you know, look what Zaccaretti did. Again, he went back, instead of trying to calculate the value of what the government received, and this is clear in the record if you look at docket number 343, pages 24, 451 to 54, it's Zaccaretti's testimony, where he acknowledges he didn't consider GE's comparable prices. He didn't consider the Air Force's own independent estimates that Pratt beat. He ignored the discounts that took place in the subsequent years under the calls for improvement. He even ignored the warranties. Instead, he went back and what he did exclusively was try to re-engineer the offer that it said Pratt would have made if it hadn't made the false statements. And just taking a step back and looking at the fraud to remind this court, the fraud that was determined to exist here was Pratt's efforts to inflate the split award price and to drive the government towards the full award price, which it tried to make as low as possible. The way it turned out, because of the calls for improvement and the reductions which are significant that Pratt made to the prices over the course of the contract, the prices Pratt, the government actually paid, were below the full source award in its initial offer. So you've got a situation here. Your point then is that the full source award offer didn't have fraud in it. It didn't have fraud in it, right. I get that, but then you have this other problem that you have calls for improvement to everything. So it gets really difficult to figure out what that means. And the way to answer that is the way I think this court approached it in the prior appeal, which is to say we're not going to go back and try to re-engineer the offer it was made. We're not going to try to decide where the taint ends. We're going to look at the value of what the government received. And if the government didn't pay more than the value of what it received, then it hasn't been harmed and it's not entitled to any actual damages. Is that the way that the district court ruled the first time before it came up on appeal? Not directly, Your Honor. The district court, I think, obviously, we think... It's a deadfall, sort of. Right. Obviously, we think it reached the correct result in terms of no damages. But we've been making all along this fair market value argument as to the proper approach. And it's the approach established by the Supreme Court in this court's precedence. And we think that the court adopted it in the last appeal. And there was briefing on this in the last appeal. The government argued that you should go in the Singer direction and the offer-based approach. And this court adopted a fair market value approach. And that was the approach the district court should have applied. And if you go back and you look at what happened on remand, it really is a situation where the case went off the rails. Immediately when the case got back, there was a scheduling order. The district court asked for briefs for both sides as to how to go about assessing damages on remand. At that point, the government started arguing that this court did not, in fact, adopt a fair market value analysis. That comes from a heading from its brief. And the district court began questioning whether there was any market in this case to begin with. And that was a premise of the district court's damages decision as well. If you look at page 5 of the court's decision, really, I think, it's questioning the central premise of whether fair market value analysis can apply. This court held correctly that it can apply. That has to be the right answer under the Supreme Court's precedence. If you look at cases like 50 acres of land, which dealt with a landfill, where they held that you could determine a fair market value for that based on comparable sales. And if you look at other cases, even like the commodities trading corporation case, where the court said that, at page 130, that the fair market value is the negotiated price, regardless of cost. And here you've got the situation where I think it's fair to say that the government is more or less talking out of both sides of its mouth here, where the Department of Defense is consistently touting this procurement as a competitive procurement, where, in the Air Force Secretary's words, both companies are going at each other's throats in these calls for improvement down the line in the contract years where the engines were actually purchased. And then the government coming here and saying, ignore the competition. We've got this taint from the initial offer, which can never be removed under its analysis, and the only way to calculate damages is to go back and try to re-engineer the offer that Pratt should have made. And so I think you've got two fundamental approaches here. No court that we're aware of outside of the Singer sole-source context has ever gone in the offer-based direction. We think this court rejected that approach properly in the first appeal. I have a question, which I don't think I've seen you addressing this, unless this is tied up a little bit in the issue-preclusion argument. But this is at page 321. You don't need to get it. I think you'll understand the point from the last opinion. Pratt was arguing this kind of as a liability point, and so they pointed out that there's this regulation, procurement regulation, says the Air Force must solicit cost or pricing data if it modifies a contract by more than $500,000. Well, of course, every modification is that amount because that's a drop in the bucket with these contracts. And then it has an exception if the price is based on adequate price competition. As we pointed out last time, we said, well, we don't think that shows Pratt doesn't have liability. But then at the end of that section we said, but that could go to damages. Maybe I'm missing something, but I just don't see either side. I'm really asking this to both of you. I'm not really seeing either side talk about that. Is it because I'm not understanding what you're arguing? Is it because you're connecting that to the issue-preclusion point? Am I missing something? No, no, you're absolutely right. We're connecting it to the issue-preclusion point. It goes to the question of whether the ---- But why? Okay, so I understand the issue-preclusion argument, but I guess the point I'm making ---- I think if you were going to consider it on damages, Your Honor, I think you would conclude that it doesn't impact damages or help the government. And here's why. I mean, what that regulation says ---- Well, first of all, there's two different regulatory points you're making. One is the finding of no adequate price competition. And just to take that first. And then the other ---- That's the one by the Board. Right. But, you see, this one isn't premised on a finding. This is just premised on the reality that they never did anything. Their inaction suggests they must have assumed sufficient competition, so why in the world wouldn't you consider competition with damages? No, that's absolutely right. I mean, really, there's two ways that the government can go about these procurements. One is the cost-based way. And if you're going to go that way, then what this regulation says is you've got to request cost data for any modification more than $500,000. And we know that the government didn't do that. The other route to go is competition. And what was unique about this procurement was that the government went all in, the Air Force went all in with competition. That's why it didn't request the additional cost data. That's why it priced based on these fierce cycles that took place and the calls for improvement in every year of the contract where the government was actually paying prices that were substantially below the BAFO price that was offered in 19---- Why don't you, if you don't mind, since you mentioned it, and just because it was the other issue you briefed, just talk for a second about the issue preclusion argument with respect to the Board finding as opposed to this. So their point is, well, they're not apples to apples. It's their basic point, so therefore issue preclusion doesn't apply. And issue preclusion is an alternative way to get to the zero damages point. And our central point on that is, look, the issue before the Board was reliance. What did the Air Force rely on when it priced these goods? And again, there are two ways you can go. You can go the cost way or you can go the competition way. And what the Board found was that the Air Force went the competition way. And that's clearly supported by all the finding that's made, including the Air Force's own letters which said that this was based solely on competition. If you look at the 1984 Air Force letter that the government even recently submitted to this court in its Rule 28J letter, there again the Air Force is saying this is based solely on competition. And so where the Board has found that this procurement, the pricing was based on competition, the government can't come here and argue that it wasn't based on competition, it was based on something else. It's true that the something else here is the BAFO and the something else there was the cost and pricing data, even if this court were going to get into hair splitting there. And the legal sort of, the difference for the legal approaches the parties take is this question of is an identicality test or is it in substance the same test. And legally we think, and this follows from the Supreme Court's decision in the Montana case, issue preclusion applies if the issues are in substance the same. Here the issue of whether the Air Force relied on competition is clearly in substance the same as the issue before the Board, even though you have this hair splitting over, you've got the cost data itself versus the narrative description of the cost data. So we do think that issue preclusion is an alternative way to get to the same conclusion. And it gets back to this fundamental point of where you have this situation of the Air Force from day one and as recently as August, holding out this procurement as the gold standard for competition where the government through its competition is getting billions of dollars of savings. Can the Department of Justice come in here and say ignore all that competition. What you really should do is go back to the initial offer, try to re-engineer that and base damages off of that. That's not fair market value analysis. It's not supported by the overwhelming record that the government did not pay more than the value of these engines and it's not consistent with the competition that in fact existed. Okay, so you'll get your full rebuttal. Thank you, Your Honor. So we'll hear from the government. Thank you, Your Honor, and may it please the Court, Benjamin Schultz on behalf of the United States. As Pratt's own executive testified and as the District Court found, Pratt understood that in this regulated procurement its prices couldn't exceed a reasonable estimate of its costs plus a reasonable profit. Pratt, nonetheless, decided to evade the governing regulatory scheme and that's why it inflated its costs. You won this argument last time. We're on to what it means, what the consequences are. Absolutely, Your Honor, and the question is what is fair market value? And as the District Court explained... Do you agree it is a fair market value test? Absolutely. You think it's a cost plus profit? No, Your Honor. And I think this is some confusion in Pratt's brief, and there's a difference between a cost plus contract, which is when you have fixed prices at the outset of the contract, where you have a fixed profit margin at the outset of the contract. And so what happens in a cost plus contract is you say that the contractor's price is going to be whatever their costs actually end up being plus the fixed profit margin that you decide. But would you say Singer is the right test? We are not advocating for the Singer presumption here. Actually, let me be clear, Your Honor, because, again, I think there's some confusion. The Singer presumption would only go to the question of how do you value the fact that Pratt offered later discounts? And in this case, Pratt's discounts were so small relative to the size of its initial fraud, $33 million versus more than $227 million, that even if you gave Pratt complete, full credit for every single discount that it gave, the government would still be entitled to over $190 million before trebling in interest. So the only thing that that would have relevance to is whether you give percentage-based discounts like the expert did or full dollar-for-dollar credit, and I'd be happy to address that. So if you agree it's fair market value, I assume you would agree competition matters. How is it that you would use an expert that doesn't do a new study after our opinion, is an auditor and not an expert in pricing and competition in this area? I mean, it just doesn't make sense to me. And then even if we put the issue preclusion argument to the side, in other words, let's just say you're right about it, it's just so hard to look at this record and not conclude that there was competition and that comparable sales, I mean, that's like speaking of gold standards, isn't that the gold standard for fair market value? I keep saying a lot of bad things, so you have a chance to respond to all of them. I would love to do that, Your Honor, because I think there's a lot of different points in there. Okay. But let me start with the first one, which is about fair market value. And the first place the court has to start is with the Supreme Court's analysis of what does fair market value mean in a regulated market? And the answer, and we know that from cases that the district court cited and cases that we cited in our brief. What's an unregulated market in this day and age? I'm really curious. Well, perhaps the answer is there isn't. You're suggesting a dichotomy that I don't think exists. Well, Your Honor, I think the point here is that when you have markets and when you have some aspect of regulation, you have to take into account the role that the regulation plays. You don't just disregard the regulation and say we're going to imagine some hypothetical market in which there are an infinite number of buyers, an infinite number of sellers, nobody has any constraints, and the complete free market rules. That's not the answer, and that's what the Supreme Court has held. So you have to take into account the regulations. The question then becomes, what are the regulations? And this is where the district court's factual findings are important, and this is where Pratt loses the case, and that's because the district court found, this is a factual finding in its original opinion, that Pratt's price couldn't exceed the sum of its reasonable cost, reasonable estimated cost, plus its reasonable profit. Now, this is not the same as a cost plus contract. I want to make that really, really clear. That's a contract in which prices are determined by actual costs plus a predetermined profit margin. This is instead a fixed-price contract, but because of the nature of the regulatory scheme, when— Let me grant every single thing you're saying. Why am I not still allowed to, at the end of the day, still check your expert's work by comparing what the government actually paid to a competitor who is producing engines for the same planes? Why am I not allowed to— It's not just why am I not allowed. Why isn't that common sense that it should be done? There's at least three reasons, and I'd love to go through every single one of them, but let me start at the very beginning, which is that because, in this regulated market, each seller's price couldn't exceed their reasonable expected cost plus a reasonable profit, the question for what the appropriate price for Pratt's engines was couldn't be determined by an engine that had different costs. The government was going to pay— I know you're going to disagree with me about this, but that really is just taking it all back to two sole-source situations. Well, Your Honor— You may have different parameters as to how this is a slightly different sole-source situation than Singer or this other case, but at the end of the day, that's the genus or the species, whatever was the right word, and I just don't quite get that. There still was competition, because as much as this was a national security issue, surely it was also a competition issue for the Air Force. Your Honor, I think your intuition here is that in viewing this as a competitive market, Your Honor wants to view this as a price-competitive market. That's not what this was. This was primarily a competition on engine quality. The idea behind inviting GE here— Price was irrelevant? We're not saying that price was irrelevant, but I think it's really telling— As soon as we know it's relevant, how could you not consider it in a damages— that just escapes me. Respectfully, Your Honor, if you look at what the government was doing here, if this was a price competition, you would have expected the government to just buy the lowest price. That's not what they did. Even in years where there were price differences, the government ended up buying from both suppliers. So I think that fact alone should tell you something, that what the government was doing here was it wasn't just saying, okay, who's the cheapest and we're going to buy from them. Did this expert consider the price that GE had paid or have sold these engines for, a comparable engine? The expert's testimony did not deal with that, and there was no need for the expert to do so. Did he consider past prices? He did not, and there was no need for him to do so. The district court cogently explained, based on other evidence in the record, why that evidence was not relevant to Pratt's prices. But let me go back to, I think, Judge Sutton's question here, because there's a couple other really important points here. The second reason why GE's prices weren't relevant here was because those prices were themselves endemic within the market. So in other words, if you look at every sale that the government made from GE, if you want to view this as a truly competitive market, a price competitive market, we don't know whether the government would have bought those engines from GE had Pratt provided honest prices. And indeed, Pratt's honest prices would have been substantially less than the prices that Pratt ended up charging the government. So because if this was truly a competitive market, you would expect GE to lower those prices later on. I really feel like I can accept every single point you're making and still have this conclusion. Two conclusions. Figuring out value is really hard in this market. But that means it requires an expert in the market, not an auditor. You relied on an auditor before the opinion. You just said, we're sticking with it. I will say it really does lead to the impression, which prior decision-makers in this very case have come to, which is there really wasn't damages. It really leads one to that impression. How could you not have the expert say, okay, it says fair market value. We better think about some other things besides someone who's really good with auditing. Your Honor, that goes to what is fair market value in this particular market. So first of all, if you agree with us and agree with the Supreme Court that fair market value in a regulated market accounts for the nature of the regulation, then the question in this market isn't what was the price of GE's engines. The question was, had Pratt been complying with the regulatory scheme? Namely, had its prices been an actual, honest calculation of its reasonable expected costs plus a reasonable profit, what prices would it have charged? And that's exactly what the expert's testimony was. The expert said, okay, I'm going to take Pratt at its word. I'm going to say, if we accept everything that they're saying, if we calculate prices the way that's compliant with the regulatory regime, what prices would Pratt have come up with? And in fact, the profit margin that the expert applied in his calculation was exactly the same profit margin that Pratt had originally proposed, that 15% profit that the government had never questioned. So all that the expert did is it said, if Pratt were complying with the regulatory regime, what would its prices have been? That was the answer the expert gave, and that's fair market value in this regulated market. Now, I think that should just, at the end of the day... You would apply the same rationale if there was a 10-to-1 difference in the pricing with the Pratt engines worth a tenth of the cost of the GE ones. They were essentially the same quality. An expert in the market would say they were engines for the same planes. That's what you would say. You would say one-to-one is one-to-one. My answer is yes, and if that seems counterintuitive... Yes, it does. Let me flip this, which is, I think the court should ask itself, why did Pratt engage in the fraud in the first place? If this was a truly competitive market in which all Pratt had to do was say to the government, hey, we're cheaper than GE, buy from us, there would have been no point to engage in fraud in the first place. Pratt could have said, yeah, you know what? We have costs that are these costs. We're going to get a 23% profit margin. But it failed. The inflated prices were all for a thing that didn't work. Well, it did work, Your Honor, and that's because of how the discounts were calculated. So first of all, the inflated prices and the discounted prices were identical in the first two years of the contract. When Pratt says it gave discounts, what it meant was in years 3, 4, 5, and 6, it gave small percentage discounts off of the original split award prices. So at least in years 1 and 2, the split award prices and the full award prices were identical. Then you get to the years where there were discounts, but what those discounts were is they were small percentage discounts. So if Pratt inflates its prices by 20%, then gives a 3% discount, at most, maybe it gets credit for 3%, and we can talk about exactly how to account for that. But at the very least, it can't then say, and we've also wiped out the other 17% inflation as well. That simply doesn't make sense. Because Pratt inflated its split award prices so high, and because its discounts were so small in comparison to the original fraud, the net result is substantial portions of the original fraud remained even after you had these discounted prices. Now, I hope that... This thing I raised before, this thing on page 321, which I really mean separately from the issue preclusion point. Sure. But we do say in the prior opinion, in response to their argument, that this establishes no liability. Well, no, I don't think that's right. But we do say in the opinion in this case, and maybe it's just wrong, but for sake of argument, let's assume it's right, that, okay, this doesn't establish no liability, but it might go to damages. So your expert obviously didn't think so. Well, you know, we don't think it properly goes to damage, and I'll point out that Pratt didn't think so on remand because they didn't make this argument. So that in and of itself should be considered. But the competition is there. That is the key premise of what they're saying. There was competition, and so you always... I mean, what's the world in which you're supposed to look at fair market value, there are comparable sales, and you don't consider comparable sales? Well, your answer is, well, they're not comparable is what you're going to say because of the regulations. Well, it's not just because of the regulations. And maybe this goes back to the other question that you answered, and I haven't fully given my answer to that. Go ahead. Sure. And that's that even if you want to disregard the regulatory nature of the regime. And we want to emphasize that we think that's absolutely contrary to Supreme Court precedent. We think you have to take into account the nature of the regulatory regime. But even if you were to disregard that and say, this is just a market with one buyer and two sellers, this court's case law says that when the district court concludes that comparable sales aren't sufficiently comparable, it can look to other measures of value. Here the district court concluded that as to GE's prices, and that was because GE had unique market entry costs that Pratt didn't experience, and because GE was expressly invited into this competition to increase industrial mobilization. Let's just step back for a moment and think about what's going on here. You have a history of a sole source procurement in which Pratt is the only engine provider and the government is worried about the quality of these engines. Now it says to another competitor out in the marketplace, you should come on into this particular market. You are going to have lots of startup costs. We get that. But we want you to come in here anyway. Now what price is it going to buy from the competitor? It's going to be much more willing to buy from the competitor at higher prices than it is from the original incumbent, precisely because that competitor had to be invited in to come in in the first place. And indeed, if you think about the incentives for not just this procurement, but for later procurements in which the Air Force is going to want to have competition later on, you don't want to set a precedent in which you invite somebody new in, make them incur all these huge startup and development costs, and then guess what? They have these startup and development costs. They're not as efficient as the original incumbent, and you're not going to buy from them. So the price at which the government was willing to buy from GE was absolutely not the same price at which the government was willing to buy from Pratt. And the district court was absolutely correct, including that GE sales weren't comparable. In any event, this court's case law holds that the district court gets wide latitude and wide discretion in that. And it's hugely important that Pratt's opening brief never even addresses that finding of the district court. If you look in their opening brief, you don't see a word about market entry costs. That should end the case right there. Because the district court reasonably concluded that GE's sales weren't comparable in light of GE's unique market entry costs and its unique role in being invited into the market, the district court looked at another measure of value. And its value was a perfectly reasonable one. The district court said, you know what? The reasonable price for a manufactured article is the manufacturer's reasonable expected cost plus a profit. That's a reasonable price at which the manufacturer would agree to sell the articles. That's a reasonable price at which the government, as the buyer, would agree to buy those articles. And that was what the expert's testimony established and the district court's credited. So even if this court thinks that our regulated market argument is wrong, it doesn't matter. Why did you on remand say we didn't adopt a fair market value? That's not what we said, and I would strongly urge the court to read the cited page from our brief. If you read that page, what you will see is that, first of all, the government embraced fair market value as a measure. And in that particular argument, all that the government was arguing was that if fair market value means something other than the price the government should have been paid, then that was not the measure that this court adopted. But this court's opinion equates the price that the government should have paid with fair market value. And indeed, the last... I used to hate this type of question when I was an advocate. So forgive me for now doing this. But let's just assume you're wrong, or at least maybe you're not wrong, but we think you're wrong, and that you just can't have the prior expert opinion do the trick, just a pure auditor-based approach, that you have to factor in the competition even though it's perhaps they're not in perfect comparisons. So we just say that that's what you have to do. What then happens here? I mean, I take it you would say, well, we're just going to get... It wouldn't be the same expert. He's an auditor. You'd have to get somebody else, right? Your Honor, I think at that point we'd have to think about what this court's opinion said and evaluate it. Standing right here, we do think that the auditor's analysis is absolutely right for the reasons... Do you agree there's no evidence of damages if we think they are comparable sales? There's no... Do the GE sales are comparable? If they're comparable sales, then it gets more complicated because... Does the auditor's opinion have any vitality at all on that assumption? Well, it depends what you mean by GE sales being comparable. If you mean that by GE sales comparable... It's definitely comparable that they go into fair market value. Sure. Then I think at that point it becomes a question of whether you can still look at GE sales notwithstanding the fact that in years two through six of the contract every single price that GE charged the government, if you believe this was a competitive market, was still a price that keyed off of Pratt's inflated prices. So in other words, you would still have to... So maybe that would tell you something about year one, but it wouldn't tell you about later years. And I want to urge the court also, because I think the court is really stuck on this point, and I want to make sure the court understands it. But what's your response to Pratt's argument that, well, you know, they don't get another chance. If the experts' assumptions are wrong, there's a failure of proof on damages. That's the point they're making, so the case is over. Well, Your Honor, at that point, presumably it would be the district court's discretion whether or not to reopen the record. When we opposed reopening the record, we did it based on our understanding of what this court's opinion was. If this court's opinion means something other than its plain meeting and what we think it meant, then, you know, at that point, especially since Pratt wanted to reopen the record as well, at the very least, the district court should be given that opportunity. But if we could step back, because this is a hugely important point, I want to make sure the court also understands that there's a whole bunch of other evidence about why GE sales aren't comparable that we haven't even gotten into yet, and that's in part because Pratt's opening brief never even challenged the district court's finding on this. And so I want to make absolutely clear, and if the court will understand this, that these aren't even in the briefs yet because of the way that they elected to raise this until their reply brief. Well, that was a preface that made me worry you were going to go on for quite a while. If you have just a couple points I think we'll be interested in, and if you have quite a few of them, you're also running the risk. Sure. Let me give kind of the highlights, but I want to make sure the court understands that there's a lot more here, and even if the court were to reject what the district court said, that doesn't end the case, and there's a lot more evidence in the record. But let me start with Colonel Nelson, and you can find this at RE-330 at 23350-51. And he testified, in this case, we had two totally different products, which would have different thrusts, different air flows, different weights, and the two different products would each develop their own specification. I mean, they're servicing the same planes. Well, first of all, Your Honor, that's actually not true. GE's products were never selected for the F-15, and there was a reason for that, and that was because GE's engines were much larger than Pratt's engines, and the government concluded that it would require very expensive modifications to the F-15 to put GE's engines in that aircraft. Now, it could have been done at great expense, but that meant that at least as to the F-15, Pratt had a very significant advantage, a very significant advantage there, and that, at the very least, means as to the F-15 sales, we would have a very strong argument that GE's sales weren't comparable. But if I could just also give additional evidence, I'll give you two more points, because I assume this is all in your brief, right? Well, Your Honor, it's not, and that's precisely because Pratt could have challenged the district court's findings about GE's sales not being comparable in its opening brief, but it didn't do that. It waited until we pointed out in our brief. But why wouldn't you I'm still not following why you wouldn't put that in your brief. Well, Your Honor, precisely because what the district court did is it made findings about market entry costs and GE's being invited into the competition precisely to improve industrial mobilization. Pratt didn't challenge those findings, and we explained in our brief that that's the end of the case. Give me one more, and if, God forbid, you want to add more, talk to the other side, and if you guys both want to file supplemental briefs, and you both agree to the terms of it, we'll hear you out. Absolutely. Here's one other, and this is RE443-21 at 37361, in which the Air Force assessed GE's engines as being more reliable and having lower support costs over the life of the engine. So there's a whole lot more here beyond what the district court did, but we still think, and I want to emphasize this, that the district court's factual findings are entitled to highly deferential review. Not only are they correct, they're correct even under that deferential review, and at the very least, it was incumbent on Pratt to challenge those findings in its opening brief. It did not. Okay. Thank you very much. I appreciate your argument and particularly answering all of our questions. Thank you. Mr. Garr. Thank you, Your Honors. I'd like to make just four quick points. First, we don't think this court should remand for another round of proceedings before Judge Rose and another inevitable appeal to this court. The government has had every opportunity in two proceedings to prove its case, and it's utterly failed to prove that it paid any more than the value of the engines that it purchased. Even today, the government hasn't come forward and provided any fair market value analysis. Instead, it's resisted every premise of this court's questions about what the fair market value of the engines are and the fact that the GE prices are comparable. If the court is looking for guidance on this, one place to look is the Chief Justice's opinion in Nike v. Already, which, although in a slightly different context, talks about why it's not appropriate to remand for another opportunity to submit evidence. In this case, in the last appeal, Your Honors remarked somewhat, I think, in a kidding tone that if the court remanded, it could take until 2020 to conclude this case. If the court remands today in this proceedings, that's exactly what both parties are staring at. Did Pratt have an expert witness who testified to these different prices? Your Honor, Your Honor, we did not put on expert testimony. We had expert reports we were prepared to, but frankly, we concluded after seeing Mr. Zaccheretti's approach that there was no reason to put on our own fair market value analysis, and the evidence that is in the record of fair market value, comparable sales, historical sales, Air Force's own independent estimates, foreign sales where the government's taking the same engines and turning around and selling them to a profit from foreign governments, that all came from the government's own experts on our cross-examination. You had that in the record, but you didn't have an expert witness. Exactly. Because we didn't need it, Your Honor, because of the way they tried it. But all of that evidence is in the record. And the government isn't here really saying, we want to prove fair market value. It's here challenging the premise. Just three remaining points. Second, I think much of the government's arguments before you today depend on this notion that the taint from the original false statements carried all the way through the procurement. I think this Court rejected that in the first appeal, and there's no reason to revisit it here. Third, much discussion on the notion that this is a regulated market. As Your Honor remarked, what isn't? If you look at the cases, Bornstein is a government, is a military procurement case. Roby is a procurement case. All these cases involved highly regulated markets. It doesn't mean that you can't do fair market value. They're absolutely wrong to suggest that this was a cost plus contract here. It was not. You'll notice that they didn't cite a single regulation to the Court in arguing that it was. And that's because there is not a regulation that says that. The one that they've cited in their AB 633, all of that goes to is the submission of cost data. And it was submitted here. But critically, the government didn't rely on that cost data in pricing the goods. It relied on competition. And lastly, with respect to comparable sales, as a matter of law, of course GE's engines, which competed for the same contract with the same specifications, were comparable. And the notion that they're arguing here that the District Court made a finding on that is just wrong. The District Court never said there were no comparable sales. If the Court looks at its decision, and it's on page 5 of its damages order, what it did is, we think, made the legally erroneous conclusion that comparable sales wasn't appropriate here because there was no market. That was an error of law. It's inconsistent with this Court's mandate that a fair market value analysis applied. And then lastly, the related point of market entry costs. That's simply a red herring. In determining comparable sales, you look on a product-by-product basis. For example, if you had a new home builder to the market, you would look at the value of the home that he built and that was sold. You wouldn't consider his market entry costs because you're doing a product-by-product comparison. And here, GE, Pratt is competing against GE, which was already in the market of aircraft, of military aircraft, and was prepared to produce the same planes. And that's recognized by the August 2014 guidelines, which recognize that they were both prepared to produce the same engines. Of course they were comparable, and if you look at comparable sales and all the other fair market value that we've provided to this Court that's in the record, they have failed to show that they paid any more than the value of what they received. Therefore, they are not entitled to actual damages. Pratt will still have to pay the significant penalty that Congress deemed appropriate, but this case should come to the end on that basis. Thank you, Mr. Garr. Thank you, Mr. Schultz. Thank you, both of you, for your helpful arguments and answering our questions. And thank you, your teams, for the briefs, which were excellent. You know, we'll do our best with this. I assume it's obvious that you guys can try to settle this on your own. It never seems very promising to settle a case in which, in round one, zero damages. Round two, what, $500-600 million damage. That's a pretty big gap, but you know, you control your own fate when you do it, which is worth thinking about. So thank you very much for your arguments. The case will be submitted and the Clerk may recess Court. This Honorable Court is now adjourned.